UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FEDERAL ELECTION COMMISSION** | CIVIL ACTION |
| VERSUS | |
| **DEFEND LOUISIANA PAC, ET AL.** | NO. 21-00346-BAJ-SDJ |

RULING AND ORDER

Before the Court is Plaintiff Federal Election Commission's **Motion For Default Judgment (Doc. 12)** against Defendants Defend Louisiana PAC and Taylor Townsend, in his official capacity as treasurer of Defend Louisiana PAC. (Doc. 12). The Motion is unopposed.

For the reasons stated herein, Plaintiff's Motion is **GRANTED**.

I.   RELEVANT BACKGROUND

A. Alleged Facts

This suit arises out of Defendants' alleged violation of the Federal Election Campaign Act ("FECA"). (Doc. 1, ¶ 1). Plaintiff, the Federal Election Commission (the "Commission"), filed suit against Defendants Defend Louisiana PAC ("Defend Louisiana") and Taylor Townsend, in his official capacity as treasurer of Defend Louisiana.[1] (*Id.* at p. 1).

---

[1] Black's Law Dictionary defines a political action committee or "PAC" as "[a]n organization formed by a special-interest group to raise and contribute money to the campaigns of political candidates who seem likely to promote its interests; a group formed by a business, union, or interest group to help raise money for politicians who support the group's public-policy interests. — Abbr. PAC." *Political-Action Committee*, BLACK'S LAW DICTIONARY (11th ed. 2019).

1

Plaintiff alleges the following. Plaintiff is an independent agency of the U.S. Government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of FECA. (*Id.* at ¶ 5). Plaintiff is authorized to initiate civil actions in U.S. district courts to obtain judicial enforcement of FECA. (*Id.* (citing 52 U.S.C. §§ 30107(e), 30109(a)(6)).

Defend Louisiana is an independent expenditure-only political committee located in Baton Rouge, Louisiana.[2] (Doc. 1, ¶ 6). Defend Louisiana registered with the Commission on April 29, 2016. (*Id.*). Defend Louisiana also maintains a bank account at Whitney Bank in Baton Rouge, Louisiana. (*Id.*). During the 2016 election cycle, Defend Louisiana made independent expenditures totaling over $600,000. (*Id.*). Defendants failed to disclose or provided inadequate disclosures for more than $90,000 in independent expenditures. (*Id.* at ¶ 1).

### i. *First Cause of Action: Inadequate Purpose for Independent Expenditures*

Plaintiff alleges that Defendants violated 52 U.S.C. § 30104(b)(6)(B)(iii) and 11 C.F.R. § 104.3(b)(3)(i)(B) by failing to provide adequate purpose statements for eight independent expenditures totaling over $45,500 on Schedule E of Defend Louisiana's pre-runoff report. (*Id.* at p. 12). In support, Plaintiff alleges the following.

On November 8, 2016, no candidate won 50% of the vote in the Louisiana U.S. Senate open primary/general election. (*Id.* at ¶ 21). U.S. Senate

---

[2] Black's Law Dictionary defines an "expenditure" as "[t]he act or process of spending or using money, time, energy, etc.; esp., the disbursement of funds" or "[a] sum paid out." *Expenditure*, BLACK'S LAW DICTIONARY (11th ed. 2019).

candidates Foster Lonnie Campbell and John Neely Kennedy competed in a runoff election held on December 10, 2016. (*Id.* at ¶ 22). Defend Louisiana made $551,525.44 in independent expenditures that supported Campbell or opposed Kennedy during the 2016 Louisiana runoff election. Those independent expenditures triggered the requirement that Defend Louisiana file both a pre-runoff and post-runoff election report. (*Id.* at ¶ 23).

On November 28, 2016, Defend Louisiana filed its pre-runoff report. (*Id.*). On Schedule E of the pre-runoff report, Defend Louisiana disclosed sixteen independent expenditures totaling $209,049.79 that supported U.S. Senate Candidate Foster Lonnie Campbell, Jr. in the 2016 Louisiana U.S. Senate runoff election. (*Id.*). Eight of those independent expenditures, totaling $45,000, had a stated purpose of "Community Outreach," as shown in Table One below (*Id.* at ¶ 24).

*Table One: Independent Expenditures with Inadequate Purpose Statements*

| Payee | Date | Purpose Statement | Federal Candidate Supported | Amount |
|---|---|---|---|---|
| APAC | 10/27/2016 | Community Outreach | Foster Lonnie Campbell | $5,500 |
| LIFE | 10/27/2016 | Community Outreach | Foster Lonnie Campbell | $7,500 |
| NOEL | 10/27/2016 | Community Outreach | Foster Lonnie Campbell | $2,500 |
| United Ballot PAC | 10/27/2016 | Community Outreach | Foster Lonnie Campbell | $5,000 |
| BOLD | 10/31/2016 | Community Outreach | Foster Lonnie Campbell | $6,000 |
| Jefferson United | 10/31/2016 | Community Outreach | Foster Lonnie Campbell | $10,000 |
| Noel | 10/31/2016 | Community Outreach | Foster Lonnie Campbell | $5,000 |
| TIPS | 10/31/2016 | Community Outreach | Foster Lonnie Campbell | $4,000 |
| | | | Total | $45,500 |

"Community Outreach" is a purpose statement often understood to mean "get-out-the-vote" or "voter registration" that is insufficiently specific to provide public disclosure regarding how Defend Louisiana used its funds (*Id.* at ¶ 25 (citing 11 C.F.R. § 104.3(b)(3)(i)(B)).

3

On January 31, 2017, Defend Louisiana filed an amended pre-runoff report, but did not change its purpose statements in Schedule E. (*Id.* at ¶ 26). Townsend signed Defend Louisiana's original and amended pre-runoff reports in his capacity as treasurer. (*Id.* at ¶ 27).

### ii. Second Cause of Action—Undisclosed Independent Expenditures

Plaintiff alleges that Defendants violated 52 U.S.C. § 30104(a)(1) by failing to disclose three independent expenditures totaling $45,475.65 on Schedule E of Defend Louisiana's post-runoff report. (*Id.* at p. 12). In support, Plaintiff alleges the following facts.

On December 12, 2016, Defend Louisiana filed a 48-hour report disclosing three independent expenditures disseminated on December 10, 2016, totaling $45,475.65. (*Id.* at ¶ 28). On January 9, 2017, Defend Louisiana filed a post-runoff report covering the period of November 21, 2016, through December 30, 2016. The report included a Schedule E disclosing nine independent expenditures totaling $297,000. However, the Schedule E did not disclose the three independent expenditures, as shown in Table Two below, that Defend Louisiana previously included in the December 12, 2016 48-hour report. (*Id.* at ¶ 29).

*Table Two: 48-Hour Report Activity Not Disclosed on Schedule E*

| Payee | Date | Purpose Statement | Federal Candidate Supported/Opposed | Amount |
|---|---|---|---|---|
| EF Business Center | 12/10/2016 | Mailers | John Neely Kennedy | $28,875.65 |
| Last World Strategies | 12/10/2016 | Digital Ad Consulting | Foster Lonnie Campbell | $8,300 |
| Last World Strategies | 12/10/2016 | Digital Ad Consulting | John Neely Kennedy | $8,300 |
| | | | Total | $45,475.65 |

4

On January 31, 2017, Defend Louisiana filed an amended post-runoff report. (*Id.* at ¶ 30). The amended post-runoff report did not contain any changes to Schedule E. (*Id.*).

### iii. *Administrative Proceedings*

On May 2, 2017, the Commission's Reports Analysis Division sent Defend Louisiana a Request for Additional Information that: (1) notified it that "Community Outreach" is an inadequate purpose statement; and (2) sought clarification of the purpose of the eight independent expenditures that were designated "Community Outreach" in its pre-runoff report. (*Id.* at ¶ 31). Defend Louisiana did not respond to the Request for Additional Information. (*Id* at ¶ 32).

On May 7, 2017, the Commission's Reports Analysis Division sent a second Request for Additional Information to Defend Louisiana requesting information pertaining to the three independent expenditures that were disclosed in the 48-hour report but not reported on Schedule E of the post-runoff report. (*Id.* at ¶ 33). Defend Louisiana did not respond to the second Request for Additional Information. (*Id.* at ¶ 34).

The Reports Analysis Division made multiple additional attempts to contact Defend Louisiana and Townsend via phone and email to resolve the defects with the pre-runoff report and post-runoff report, but Defendants failed to correct the reports. (*Id.* at ¶ 35).

On June 28, 2018, the Commission notified Defendants that they may have violated FECA. (*Id.* at ¶ 36). The Commission also notified Defendants that it referred the matter to the Commission's Office of General Counsel for a possible enforcement action under 52 U.S.C. § 30109. (*Id.* at ¶ 36).

The letter explained to Defendants that the violations included failing to provide adequate purposes for eight independent expenditures in Defend Louisiana's pre-runoff report and for failing to disclose three independent expenditures in its post-runoff report. (*Id.* at ¶ 37). The letter also gave Defendants the opportunity to respond, but neither provided a written response. (*Id.*).

On May 15, 2019, the Commission decided by a vote of 4-0 to find reason to believe that Defend Louisiana and Townsend violated 52 U.S.C. §§ 30104(a)(l) and 30104(b)(6)(B)(iii) by failing to provide adequate purposes for eight independent expenditures in Defend Louisiana's pre-runoff report and by failing to disclose three independent expenditures in its post-runoff report. (*Id.* at ¶ 38).

On May 23, 2019, the Commission notified Defendants of its "reason-to-believe findings" in a letter, which attached the factual and legal analysis supporting the Commission's determination. (*Id.* at ¶ 39 (citing 52 U.S.C. § 30109(a)(2)). During the ensuing investigation, Defendants failed to respond to the Commission's reason-to-believe letter. (*Id.* at ¶ 40 (citing 52 U.S.C. § 30109(a)(2)).

On July 2, 2020, the Commission decided by a vote of 4-0 to find probable cause to believe that Defend Louisiana and Townsend violated 52 U.S.C. §§ 30104(a)(l) and 30104(b)(6)(B)(iii). (*Id.* at ¶ 41 (citing 52 U.S.C. § 30109(a)(3)).

On July 23, 2020, the Commission notified Defendants of its "probable cause findings" in a letter, which also contained a proposed conciliation agreement. (*Id.* at ¶ 42). The Commission's mandated conciliation period began on July 23, 2020, when the Commission notified Defendants of its probable cause finding and certified its probable cause vote. (*Id.* at ¶ 43). The Commission was required to conciliate for at least 30 days—until at least August 23, 2020. (*Id.*). The Commission attempted to conciliate for a period of 90 days. (*Id.* at ¶ 44). Defendants did not respond to the Commission's attempts to negotiate a conciliation agreement. (*Id.*).

On March 8, 2021, the Commission decided by a vote of 6-0 to authorize a civil action against Defendants for failing to provide adequate purposes for eight independent expenditures in Defend Louisiana's pre-runoff report and for failing to disclose three independent expenditures in its post-runoff report. (*Id.* at ¶ 45). The Commission alleges that it has satisfied all of the jurisdictional requirements in FECA that are prerequisites to filing this action. (*Id.* at ¶ 46).

### iv. *Relevant Statutory and Regulatory Provisions*

The Commission points to the following relevant statutory and regulatory provisions. FECA establishes a system to disclose the financing and spending of money in federal election campaigns. 52 U.S.C. §§ 30101-30146; (*See* Doc. 1, ¶ 8). It does so by regulating "contribution[s]" and "expenditure[s]." *Id.* § 30101(8)(A), (9)(A); (*See* Doc. 1, ¶ 8). Under the Act, a "contribution" includes any "gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." *Id.* at § 30101(8)(A); (*See* Doc. 1, ¶ 8).

An "expenditure" includes "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office." *Id.* at § 30101(9)(A); (*See* Doc. 1, ¶ 8).

Under FECA, "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year," *id.* at § 30101(4)(a) and has "the major purpose of . . . the nomination or election of a candidate" is a political committee. *Buckley v. Valeo*, 424 U.S. 1, 79 (1976) (per curiam); (*See* Doc. 1, ¶ 9).

Groups that fall within the definition of a "political committee" are required to register with the Commission, appoint a treasurer, and meet other organizational requirements. 52 U.S.C. § 30103; (*See* Doc. 1, ¶ 10). The treasurer is required to sign and file regular reports disclosing the committee's receipts and disbursements. 52 U.S.C. § 30104(a)(l); (*See* Doc. 1, ¶ 10).

Requiring political committees dedicated to making independent expenditures to file reports disclosing receipts and disbursements: (1) serves the public "interest in knowing who is speaking about a candidate and who is funding that speech," and (2) "deters and helps expose violations of other campaign finance restrictions, such as those barring contributions from foreign corporations or individuals." *SpeechNow.org v. FEC*, 599 F.3d 686, 698 (D.C. Cir. 2010) (en banc); (*See* Doc. 1, ¶ 11).

Political committees that are not authorized by a federal candidate—so called

"unauthorized committees"—may choose to file their disclosure reports either: (1) monthly; or (2) quarterly during election years with an additional "pre-election report" due 12 days before an election and a "post-election report" due 30 days after the election. 52 U.S.C. § 30104; (*See* Doc. 1, ¶ 12).

Unauthorized committees must include independent expenditures in these reports. 52 U.S.C. § 30104(b)(6)(B)(iii); (*See* Doc. 1, ¶ 13). Independent expenditures are those that expressly advocate for "the election or defeat of a clearly identified federal candidate [] and that [are] not made in concert or cooperation with or at the request or suggestion" of the candidate or his or her committee or agents, "or a political party committee or its agents." 52 U.S.C. § 30101(17); (*See* Doc. 1, ¶ 13).

Included in the information political committees must disclose on their regularly scheduled reports is the full name and address of each "person who receives any disbursement during the reporting period in an aggregate amount . . . of $200 within the calendar year . . . in connection with an independent expenditure by the reporting committee," as well as "the date, amount, and purpose of" the independent expenditure. 52 U.S.C. § 30104(b)(6)(B)(iii); *see also* 11 C.F.R. § 104.3(b)(3)(vii); 11 C.F.R. § 104.4(a); (*See* Doc. 1, ¶ 14). This itemized list of a committee's independent expenditures is required to be included on Schedule E of the form on which unauthorized committees report. 11 C.F.R. § 104.3(b)(3)(vii); (*See* Doc. 1, ¶ 14).

"[P]urpose means a brief statement or description of why the disbursement was made." 11 C.F.R. § 104.3(b)(3)(i)(A); (*See id.* at ¶ 15). These descriptions must "provide sufficient public disclosure of how a committee used its funds." (*See* Doc. 1, ¶ 15).

9

*Amendments to Federal Election Campaign Act of 1971*; *Regulations Transmitted to Congress*, 47 Fed. Reg. 15,080, 15,086 (Mar. 7, 1980); *see also Statement of Policy: "Purpose of Disbursement" Entries for Filings With the Commission*, 72 Fed. Reg. 887 (Jan. 9, 2007) (explaining that the "entry, when considered along with the identity of the disbursement recipient, must be sufficiently specific to make the purpose of the disbursement clear"); (*See* Doc. 1, ¶ 15).

Examples of purpose statements that are sufficiently specific include: "dinner expenses, media, salary, polling, travel, party fees, phone banks, travel expenses, travel expense reimbursement, and catering costs." 11 C.F.R. § 104.3(b)(3)(i)(B); (*See* Doc. 1, ¶ 15). "[S]tatements or descriptions such as advance, election day expenses, other expenses, expenses, expense reimbursement, miscellaneous, outside services, get-out-the-vote and voter registration," on the other hand, do not provide sufficient public disclosure of how a committee used funds. *Id.*; (*See* Doc. 1, ¶ 15).

If a political committee makes independent expenditures for an election that aggregate to $10,000 or more in a calendar year, in addition to reporting those expenditures on the committee's regular periodic reports the committee must also report those expenses on a "48-hour report," *i.e.*, a separate report due within that time frame after the communication is publicly disseminated. 11 C.F.R. § 104.4(b)(2); (*See* Doc. 1, ¶ 16). This 48-hour reporting obligation arises for each additional aggregate $10,000 in independent expenditures the political committee makes in a single election. (*See* Doc. 1, ¶ 15). The information required to be reported about

10

disbursements for independent expenditures on 48-hour reports is the same information required on Schedule E of regular periodic reports. *Id.*; (*See* Doc. 1, ¶ 15).

Political committees making expenditures related to Louisiana U.S. Senate elections must adhere to reporting requirements and deadlines for both the Louisiana open primary/general election and any subsequent runoff election. FEC Advisory Op. 2000-29, https://www.fec.gov/files/legal/aos/2000-29/2000-29.pdf; (*See* Doc. 1, ¶ 18). When a runoff election is necessary, political committees must file pre-runoff and post-runoff election reports disclosing campaign financing and spending. *Id.*; *see also FEC, Primary and General Election Report Notice*, https://www.fec.gov/help-candidates-and-committees/dates-and-deadlines/2020-reportingdates/prior-notices-2020/election-report-notice-louisiana/. (*See* Doc. 1, ¶ 18).

FECA authorizes a U.S. district court to order a defendant who has violated FECA to pay a civil penalty. 52 U.S.C. § 30109(a)(6)(B). For violations that are not knowing and willful, "the civil penalty shall not exceed the greater of $20,528 or an amount equal to any contribution or expenditure involved in the violation." 11 C.F.R. § 111.24 (a)(l); (*See* Doc. 1, ¶ 19). In addition to imposing civil penalties, FECA authorizes U.S. district courts to "grant a permanent or temporary injunction, restraining order, or other order" against any defendant who has violated the Act. 52 U.S.C. § 30109(a)(6)(B); (*See* Doc. 1, ¶ 20).

### B. Procedural History

Plaintiff filed suit on June 14, 2021. (Doc. 1). Despite being personally served on June 29, 2021, Defendants have not appeared in this case. (Doc. 6; Doc. 7). On

August 13, 2021, Plaintiff filed a Request for Entry of Default. (Doc. 8). The Clerk of Court entered Clerk's Entries of Default on the same day. (Doc. 9). Plaintiff now moves for a Default Judgment against Defendants. (Doc. 12).

## II.  STANDARD OF REVIEW

The United States Court of Appeals for the Fifth Circuit has adopted a three-step process to obtain a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered by the clerk when the default is shown "by affidavit or otherwise." *See id.*; *New York Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141.

After a party files for a default judgment, courts must apply a two-part process to determine whether a default judgment should be entered. First, a court must consider whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including the following: (1) whether there are material issues of fact; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of the default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id.* Default judgments are disfavored due to a strong policy

in favor of decisions on the merits and against resolution of cases through default judgments. *Id.* Default judgments are "available only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted).

Second, the Court must assess the merits of Plaintiff's claims and determine whether Plaintiff has a claim for relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Hamdan v. Tiger Bros. Food Mart, Inc.*, No. CV 15-00412, 2016 WL 1192679, at *2 (M.D. La. Mar. 22, 2016).

### III. ANALYSIS

#### A. Whether Default Judgment Is Appropriate

The Court must determine whether default judgment is appropriate under the circumstances by considering the *Lindsey* factors. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Here, Defendants failed to file an Answer or Rule 12 Motion in response to Plaintiff's Complaint. (Doc. 1). Consequently, there are no material issues of fact. *See id.*; *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The grounds for default have been clearly established in the record. (Doc. 6–Doc. 9); *See Lindsey*, 161 F.3d at 893. No evidence before the Court indicates either substantial prejudice or that Defendants' failure to respond or appear was the result of "good faith mistake or excusable neglect." *See id.* Further, Defendants' failure to file a responsive pleading or otherwise defend the

instant lawsuit mitigates the harshness of a default judgment. *See id.*; *see also Taylor v. City of Baton Rouge,* 39 F. Supp. 3d 807, 814 (M.D. La. 2014). Finally, the record contains no facts giving rise to good cause to set aside the default judgment if challenged by Defendants. *See Lindsey*, 161 F.3d at 893. The Court finds that the *Lindsey* factors weigh in favor of entry of default judgment in favor of Plaintiff.

### B. Whether Plaintiff's Complaint Establishes a Viable Claim for Relief

The Court must also assess the merits of Plaintiff's claims to determine whether Plaintiff's Complaint establishes a viable claim for relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Hamdan v. Tiger Bros. Food Mart, Inc.*, No. CV 15-00412, 2016 WL 1192679, at *2 (M.D. La. Mar. 22, 2016). The Court will address each of Plaintiff's two causes of action in turn.

#### i. First Cause of Action: Inadequate Purpose for Independent Expenditures

First, Plaintiff asks the Court to declare that Defendants violated 52 U.S.C. § 30104(b)(6)(B)(iii) and 11 C.F.R. § 104.3(b)(3)(i)(B) by failing to provide an adequate purpose statement for eight independent expenditures totaling $45,500 on Schedule E of Defend Louisiana's 2016 pre-runoff report. Section 30104(b)(6)(B)(iii) provides:

(b) Contents of reports

Each report under this section shall disclose—

(B) for any other political committee, the name and address of each--

14

(iii) person who receives any disbursement during the reporting period in an aggregate amount or value in excess of $200 within the calendar year (or election cycle, in the case of an authorized committee of a candidate for Federal office), in connection with an independent expenditure by the reporting committee, together with the date, amount, ***and purpose of any such independent expenditure*** and a statement which indicates whether such independent expenditure is in support of, or in opposition to, a candidate, as well as the name and office sought by such candidate, and a certification, under penalty of perjury, whether such independent expenditure is made in cooperation, consultation, or concert, with, or at the request or suggestion of, any candidate or any authorized committee or agent of such committee[.]

11 C.F.R. § 104.3(b)(3)(i)(B) provides:

(b) Reporting of disbursements. Each report filed under § 104.1 shall disclose the total amount of all disbursements for the reporting period and for the calendar year (or for the election cycle, in the case of an authorized committees) and shall disclose the information set forth at paragraphs (b)(1) through (b)(4) of this section. The first report filed by a political committee shall also include all amounts disbursed prior to becoming a political committee under § 100.5 of this chapter, even if such amounts were not disbursed during the current reporting period.

(3) Itemization of disbursements by political committees other than authorized committees. Each political committee, other than an authorized committee, shall report the full name and address of each person in each of the following categories, as well as the information required by each category;

(i) Each person to whom an expenditure in an aggregate amount or value in excess of $200 within the calendar year is made by the reporting committee to meet the committee's operating expenses, together with the date, amount, ***and purpose of such operating expenditure***;

(B) Examples of statements or descriptions which meet the requirements of 11 CFR 104.3(b)(3) include the following: dinner expenses, media, salary, polling, travel, party fees, phone banks, travel expenses, travel expense reimbursement, and catering costs. ***However, statements or descriptions such as advance, election day expenses, other expenses, expenses, expense reimbursement, miscellaneous, outside services, get-out-the-vote and voter registration would not meet the requirements of 11 CFR 104.3(b)(3) for reporting the purpose of an expenditure.***

15

Here, Plaintiff alleges that Defend Louisiana provided purpose statements of "Community Outreach" for eight expenditures, totaling $45,000. (Doc. 1, ¶ 24). Plaintiff further asserts that the purpose of "Community Outreach" is similar to "get-out-the-vote" or "voter registration" and is insufficiently specific to provide public disclosure of how the committee used its funds (Id. at ¶ 25 (citing 11 C.F.R. § 104.3(b)(3)(i)(B)). Defendants have failed to challenge the facts alleged or arguments presented in any manner.

In the absence of any indication to the contrary from Defendants, the Court finds that Defendants violated 52 U.S.C. § 30104(b)(6)(B)(iii) and 11 C.F.R. § 104.3(b)(3)(i)(B) by failing to provide an adequate purpose statement for eight independent expenditures totaling $45,500 on Schedule E of Defend Louisiana's 2016 pre-runoff report.

### ii. *Second Cause of Action—Undisclosed Independent Expenditures*

Second, Plaintiff asks the Court to declare that Defendants violated 52 U.S.C. § 30104(a)(1) by failing to disclose three independent expenditures totaling $45,475.65 on Schedule E of Defend Louisiana's post-runoff report. Section 30104(a)(1), "Reporting Requirements," provides:

(a) Receipts and disbursements by treasurers of political committees; filing requirements

(1) Each treasurer of a political committee ***shall file reports of receipts and disbursements*** in accordance with the provisions of this subsection. The treasurer shall sign each such report.

Plaintiff alleges that Defend Louisiana's post-runoff report failed to disclose

16

three independent expenditures totaling $45,475.65. (*Id.* at p. 12). Again, Defendants failed to dispute these facts.

In the absence of any indication to the contrary from Defendants, the Court finds that Defendants violated 52 U.S.C. § 30104(a)(1) by failing to disclose three independent expenditures totaling $45,475.65 on Schedule E of Defend Louisiana's post-runoff report.

### C. Relief Sought

A defaulting defendant "concedes the truth of the allegations of the Complaint concerning defendant's liability, but not damages." *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011). A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated "by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). If a court can mathematically calculate the amount of damages based on the pleadings and supporting documents, a hearing is unnecessary. *Joe Hand Promotions, Inc. v. Alima*, No. 3:13–CV–0889–B, 2014 WL 1632158, at *3 (N.D. Tex. Apr. 22, 2014) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

Here, Plaintiff seeks the following relief: (1) a civil penalty against Defendants in the amount of $41,056 for violating 52 U.S.C. §§ 30104(b)(6)(B)(iii) and 30104(a)(1); (2) a permanent injunction, enjoining Defendants from further violations of 52 U.S.C. §§ 30104(b)(6)(B)(iii) and 30104(a)(1); (3) a Court Order requiring

17

Defendants to correct their reports. (Doc. 12-2). The Court will address each in turn.

### i. Civil Penalty

First, Plaintiff requests that the Court impose a civil penalty on Defendants in the amount of $41,056 for violating 52 U.S.C. §§ 30104(b)(6)(B)(iii) and 30104(a)(1). Specifically, Plaintiff requests that the Court "assess the statutory amount of $20,528 as the civil penalty for each of the two series of violations, for a total amount of $41,056 against Defendants." (Doc. 12-1, p. 10 (citing 11 C.F.R. § 111.24 (a)(1) ("the civil penalty shall not exceed the greater of $20,528 or an amount equal to any contribution or expenditure involved in the violation."). Considering the undisputed facts before the Court, the Court orders Defendants to pay a civil penalty in the total amount of $41,056.00 for violating 52 U.S.C. §§ 30104(b)(6)(B)(iii) and 30104(a)(1).

### ii. Permanent Injunction

Second, Plaintiff requests that the Court permanently enjoin Defendants from future violations of 52 U.S.C. §§ 30104(a)(1) and 30104(b)(6)(B)(iii). (Doc. 12-1, p. 11; Doc. 1, ¶ 20 (citing 52 U.S.C. § 30109(a)(6)(B)) ("In any civil action instituted by the Commission under subparagraph (A), the court may grant a permanent or temporary injunction, restraining order, or other order, including a civil penalty"). Because the Court has found that Defendants violated the Act, the Court permanently enjoins Defendants from further violations of 52 U.S.C. §§ 30104(b)(6)(B)(iii) and 30104(a)(1).

### *iii. Order to Correct Reports*

Finally, Plaintiff requests that the Court order Defendants to correct the reports at issue. (Doc. 12-1, p. 11). Again, Defendants have failed to dispute the facts before the Court. Accordingly, Defendants shall correct the following: (1) Defend Louisiana PAC's November 28, 2016 pre-runoff report by providing adequate purpose statements for the eight independent expenditures designated as "Community Outreach"; and (2) Defend Louisiana PAC's January 9, 2017 post-runoff report to include the three independent expenditures listed in Defend Louisiana PAC's December 12, 2016 48-hour report.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Entry of Default Judgment (Doc. 12)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defend Louisiana PAC and Taylor Townsend, in his official capacity as treasurer, shall pay a civil penalty in the total amount of $41,056.00 for violating 52 U.S.C. §§ 30104(b)(6)(B)(iii) and 30104(a)(1).

**IT IS FURTHER ORDERED** that Defend Louisiana PAC and Taylor Townsend, in his official capacity as treasurer, are permanently enjoined from further violations of 52 U.S.C. §§ 30104(b)(6)(B)(iii) and 30104(a)(1).

**IT IS FURTHER ORDERED** that Defendants Defend Louisiana PAC and Taylor Townsend, in his official capacity as treasurer, shall correct Defend Louisiana PAC's November 28, 2016 pre-runoff report by providing adequate

purpose statements for the eight independent expenditures designated as "Community Outreach."

**IT IS FURTHER ORDERED** that Defendants Defend Louisiana PAC and Taylor Townsend, in his official capacity as treasurer, shall correct Defend Louisiana PAC's January 9, 2017 post-runoff report to include the three independent expenditures listed in Defend Louisiana PAC's December 12, 2016 48-hour report.

Baton Rouge, Louisiana, this 22nd day of July, 2022

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**